IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

STEPHEN E. SLAUGHTER                                                PLAINTIFF

V.                          CASE No. 1:19–CV–01023–SOH

COLUMBIA MUTUAL INSURANCE COMPANY
d/b/a COLUMBIA INSURANCE GROUP                                      DEFENDANT

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant, Columbia Mutual Insurance Company ("Columbia" or "Defendant"), submits the following reply brief in further support of its Motion to Dismiss Plaintiff's First Amended Class Action Complaint. ECF No. 23, 24.

**I.      There Is No Private Right of Action Under Regulation 43**

Eighth Circuit law, as well as case law in the Eastern District, make clear that no private right of action exists under Regulation 43. *See Design Professionals Ins. Co. v. Chicago Ins. Co.*, 454 F.3d 906 (8th Cir. 2006); *Motto v. State Farm Fire & Cas. Co.*, No.4: 11 CV00742 BSM, 2012 WL 13027939, at* 1 (E. D. Ark. Nov. 5, 20 12) ("Motto does not, however, offer any legal authority for her position that a violation of [Regulation 43] creates a private right of action in a civil case."). In an effort to defeat Columbia's motion, Plaintiff confuses the issue

and incorrectly characterizes Columbia's argument as one regarding preemption. Based upon this erroneous premise, Plaintiff then incorrectly argues that the Arkansas Supreme Court has rejected Columbia's argument that any claim predicated on a violation of the Trade Practices Act ("TPA" or "Act") must be dismissed. However, neither of the cases cited by plaintiff, *Aetna Cas. & Sur. Co. v. Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1984) and *Employers Equitable Life Ins. Co. v. Williams,* 282 Ark. 29, 29, 665 S.W.2d 873, 873 (1984) stands for this proposition. The Arkansas Supreme Court simply explained in both cases that the TPA does not *preempt* the tort of bad faith in Arkansas.

Columbia does not advance the argument that the TPA preempts the tort of bad faith. Instead, Columbia argues that *no private right of action exists* based on violations of Department of Insurance Regulations promulgated under the Act because the Act explicitly provides that there is no private right of action to insureds for violations of the TPA or its regulations. Indeed, the Arkansas Supreme Court has correctly recognized that "the Trade Practices Act is only an effort to clean up undesirable conduct of insurers," completely unrelated to any private right of action that an insured may have against an insurer. *See Aetna Cas. & Sur. Co.,* 664 S.W.2d at 465. *See also Williams v. State Farm Mut. Auto. Ins. Co.,* No. 5:10CV00032 JLH, 2010 WL 2573196, at *3 n.6 (E.D. Ark. June 22, 2010) ("In the context of making that argument, the plaintiffs cite Arkansas Code

section 23-66-206(13). That statute does not provide a private right of action."); *Hudson Enterprises, Inc. v. Risk Placement Servs., Inc.,* No. 4:15-CV-12-DPM, 2015 WL 3454502, at *1 (E.D. Ark. May 29, 2015) ("No private right of action exists under the Insurance Trade Practices Act.").

In further support of his opposition, Plaintiff relies on *Bryant v. State Farm Fire & Cas. Co.,* No. 3:12-CV-00147-SWW, 2013 WL 1445482, at *5 (E.D. Ark. Apr. 9, 2013). In *Bryant,* the court allowed the Plaintiffs' bad faith claim to proceed solely based on its finding that, in light of the record in that case, there were "facts and circumstances from which reasonable minds might conclude" that the plaintiffs had alleged a valid bad faith claim. *Id.* The court noted that the insurer "made a decision to ignore evidence obtained in its investigation that pointed to Plaintiffs' truthfulness and cast doubt on the idea that they committed arson and made misrepresentations." *Id.* Accordingly, the court allowed the bad faith claim to proceed, despite its acknowledgement that "[w]hile the Trade Practices Act gives the state authority to establish rules of conduct and to punish offenders. it provides no private right of action to insureds for violations of the Act or of regulations promulgated under the Act's authority." *Id.* In the instant case,

however, Plaintiff has alleged only a violation of Rule 43 from which all other claims arise.[1] There are no other "facts and circumstances" pled in the Complaint.

Equally without merit is Plaintiff's argument that the Arkansas Deceptive Trade Practices Act ("ADTPA") can serve as a vehicle to enforce statutes (such as the TPA) that do not have a private right of action.[2] In support of Plaintiff's argument, he relies on *M.S. Wholesale Plumbing, Inc. v. Univ. Sports Publications Co.*, No. 4:07CV00730 SWW, 2008 WL 90022, at *4 (E. D. Ark. Jan. 7, 2008). As Plaintiff even acknowledges, *M.S. Wholesale* is easily distinguished because while the statutes at issue in that case, the Telephonic Sellers Act and the School Calendar Act, did not create a private right of action, both statutes "provide[d] that a violation of statute provisions constitute a *per se* violation of the ADTPA." *Id.*[3] Plaintiff argues that this distinction does not matter. However, based on the legislature's conscious inclusion of the *per se* violation provision in those two statutes, and the omission of such a provision from the TPA and insurance regulations, it is clear that this is meant to be the exception, and not the

---

[1] In *Design Professionals Ins. Co. v. Chicago Ins. Co.*, 454 F.3d 906 (8th Cir. 2006), the Eighth Circuit explained the purpose of Rule 43, noting "[b]ut because the insurer owes the duty to the state, not to the individual insured, the insured has no private right of action for breach of that duty". *Id* at 912 (citations omitted).

[2] As noted in footnote 2 of Defendant's brief in support of its motion to dismiss, The Trade Practices Act, subchapter 2 of the Arkansas insurance statutes, Ark. Code Ann. § 23-66-201 et seq. is distinguished from the Arkansas Deceptive Trade Practices Act, chapter 88 of the Arkansas consumer protection statutes, Ark. Code Ann. §4-88-101 et seq.

[3] *See, e.g.* the School Calendar Act, Ark.Code. Ann. §§ 4-88-503(a): "A violation of this subchapter shall constitute a violation of § 4-88-101 et seq. pertaining to deceptive trade practices."; Telephonic Sellers Act, Ark. Code. Ann. § 4-99-111(b): "Violation of any of the provisions of this chapter shall constitute an unfair or deceptive act or practice as defined by the Deceptive Trade Practices Act, § 4-88-101 et seq."

rule. If the legislature intended for a violation of Rule 43 to be a *per se* violation of the ADTPA, which would accordingly create a mechanism for enforcing a private right of action for violations of Rule 43, the Arkansas legislature would have said so.

Lastly, Plaintiff argues that the Eighth Circuit's decision in *Design Professionals Ins. Co. v. Chicago Ins. Co.*, 454 F.3d 906 (8th Cir. 2006), is no longer good law. He claims that its holding has been weakened by the Arkansas Supreme Court's ruling in *Air Evac EMS, Inc. v. USAble Mut. Ins. Co.*, 2017 Ark. 368, 533 S.W.3d 572 (2017). Not true. A review of *Air Evac* reveals that it has absolutely no bearing on *Design Professionals*, or the TPA. *Air Evac* specifically concerned the "safe harbor" provision in the ADTPA, Ark. Code Ann. § 4-88-101(3), which states that the ADTPA does not apply to "[a]ctions or transactions specifically permitted under laws administered by the Insurance Commissioner." The *Air Evac* court held that the safe harbor provision does not preclude claims generally relating to insurance and that it narrowly applies only to actions or transactions *specifically* permitted under laws administered by the Insurance Commissioner.[4] The case contains no discussion about the TPA or the Eighth Circuit's holding in *Design Professionals*.

---

[4] Defendant has not argued that Plaintiff's claims fall within the ADTPA safe harbor.

Moreover, even after the *Air Evac* decision, courts continue to rely upon *Design Professionals* to dismiss private actions brought for alleged non-compliance with Rule 43. *See Parker Law Firm v. Travelers Indem. Co.*, No. 5:18-CV5080, 2018 WL 3999826, at *4 (W.O. Ark. Aug. 21, 2018) ("The only remaining cause of action listed in the Complaint is violation of the Arkansas Insurance Code Trade Practices Act. But while this Act 'gives the state authority to establish rules of conduct and to punish offenders, it provides no private right of action to insureds for violations of the Act.'" (quoting *Design Professionals*, 454 F.3d at 912) (citation omitted)).

Finally, Plaintiff argues that even if *Design Professionals* is still good law, it is nonetheless distinguishable because the section of Rule 43 considered in that case addressed a substantive issue whereas here, the issue is procedural. Plaintiff argues a distinction without a difference. *Design Professionals,* like the instant case, involved a claimed violation of Rule 43. The court in *Design Professionals,* a case that is binding on this Court, very clearly found that *any* violation of Rule 43 is a breach of a duty owed to the state, but not to an individual insured. *Id.* at 912.

## II. Plaintiff's ADTPA, Fraud, and Bad Faith Claims Do Not Meet the Rule 9(b) Standard

Plaintiff's fraud, bad faith, and ADTPA claims fail to meet the heightened pleading standards required under Rule 9(b). At most, Plaintiff's thin allegations state in a conclusory fashion that Columbia's practices may have deviated from the

requirements of Arkansas insurance law, but such generalized allegations are insufficient to support a claim for a violation of the catch-all provision of the ADTPA. The Eighth Circuit has held that merely pleading the catch-all provision, without some connection to the specific prohibitions enumerated in the Act, fails to state a viable claim under the ADTPA. *Universal Coop., Inc. v. AAC Flying Serv., Inc.*, 710 F.3d 790, 795 (8th Cir. 2013). The Eighth Circuit explained that there is no basis to "convert the relatively nuanced phrase chosen by the [Arkansas] legislature for the catch-all provision -- "unconscionable, false, or deceptive" -- into a general reference to any unlawful conduct" that could give rise to an ADTPA claim. *Id.; see also Rose v. Ark. State Plant Bd.*, 363 Ark. 281 (Ark. 2005).

Plaintiff's fraud claim likewise fails to satisfy the particularity requirements of Rule 9(b). Further, because Plaintiff's bad faith claim is premised on fraud, his bad faith claim is also subject to the heightened pleading requirements of Rule 9(b).

To meet Rule 9(b)'s heightened pleading requirements, Plaintiff must allege "such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Drobnak v. Anderson Corp.*, 561 F.3d 778, 783 (8th Cir. 2009).

Contrary to his assertion, Plaintiff's fraud claim simply does not set forth the requisite factual allegations to meet this heightened standard. At most, Plaintiff's allegations assert that he disagrees with the valuation determined by Columbia. This, however, does not amount to fraud. Nowhere in the Complaint are the requisite allegations regarding the time, place and contents of Columbia's purported false representations, nor does the Complaint identify the individual who purportedly made such representations. The Complaint also fails to allege that Columbia engaged in any affirmative act of misconduct that may be characterized as dishonest, malicious, or oppressive or as an act of hatred, ill will, or in the spirit of revenge. Accordingly, Plaintiff's fraud and bad faith claims must be dismissed.[5]

### III. Plaintiff Failed to Adequately Plead Reliance and Actual Financial Loss To Maintain a Claim Under the ADTPA

The 2017 amendment to the ADTPA leaves no question that reliance is an essential element of an ADTPA claim. Accordingly, Plaintiff's ADTPA claim must allege that Plaintiff relied on the purported fraudulent conduct. Plaintiff contends that he has sufficiently pled reliance because he has demonstrated an

---

[5] Plaintiff's argument that his claims meet the heightened pleading standard is further undermined by the fact that his counsel has filed nearly identical lawsuits with nearly identical fraud, ADTPA, and bad faith counts in seven separate lawsuits against seven different insurers in Arkansas. *See Bray v. Esurance Property & Casualty Insurance Co.*, No. 4: 19-cv-00457-JM; *Beth v. Trumbull Ins. Co.*, No.4: 19-cv-00459-JM (E.D. Ark.); *DuPriest et al. v. Allstate Ins. Co.*, No. 4:19-cv-00230-JM (E.D. Ark.); *Kirby v. Safeco Ins. Co. of Ill.*, No. 3: 19-cv-00188-JM (E. D. Ark.); *Torrence v. Automobile Club Inter-Insurance Exchange*, No.4: 19-cv-00354-JM (E.D. Ark.); *Armstead v. Farmers Ins. Co., Inc.*, NO. 4:19-cv-00458-JM (E.D. Ark); *Moffit v. State Farm Mutual Automobile Insurance Company*, No. 1: 32CV19-161-DPM (E.D. Ark.). The concept that Plaintiff's counsel can file boilerplate Complaints in all of these matters is entirely contradictory to Plaintiff's argument that his allegations have been pled with particularity.

"actual financial loss." Plaintiff is wrong. As an initial matter, the statute provides a private right of action for "a person who suffers an actual financial loss *as a result of* her reliance on the use of a practice declared unlawful" by the ADTPA. Ark. Code Ann. § 4-88-113(f)(1)(A)(2). Consequently, Plaintiff must demonstrate that 1) he suffered an actual financial loss; and 2) that the actual financial loss was caused by his reliance. Plaintiff has not properly pleaded either element.

An "[a]ctual financial loss" is "an ascertainable amount of money that is *equal to the difference between the amount paid by a person for goods or services and the actual market value of the goods or services provided to a person.*" Ark. Code Ann. § 4-88-102(9) (emphasis added). While Plaintiff's Complaint speaks to a scheme to "systematically undervalue vehicles", Arkansas law requires more. Section 4-88-102(9) makes clear that one-half of the "ascertainable amount of money" determination requires an allegation concerning the "actual market value of the goods or services provided to a person." Ark. Code Ann. § 4-8-102(9). In this case, that provision requires that Plaintiff allege the "actual market value" of his 2003 Chevrolet Silverado C1500 truck. There is no such particularity pleaded in the Complaint.

Evidence of Plaintiff's failure to meet the heighted pleading requirements of Rule 9(b) is further illustrated by Plaintiff's curious argument in support of his "actual financial loss" claim. Specifically, Plaintiff argues that "[b]ut for CIG's

unlawful deductions, Slaughter would have received more money – at minimum 7% more – for his total loss claim". ECF No. 29 at p. 23. Interestingly, the inescapable premise for this argument is that the total loss value paid by Columbia *does in fact* represent the fair market value of Plaintiff's vehicle since he contends that his "actual financial loss" is at minimum 7% greater than this amount.

Nor does Plaintiff plead any facts establishing that the total loss amounts paid by Columbia were lower than the actual cash value of those vehicles, or that any adjustments in the valuation analysis used by Columbia was not warranted or appropriate, or were themselves deceptive. As discussed in the previous section, Plaintiff's ADTPA claim must be pled with particularity. Simply claiming that Plaintiff suffered an actual financial loss, without any specific factual support, does not satisfy the requirements of Rule 9(b).

Regarding reliance, Plaintiff simply points to paragraph 38 in his fraud claim which states: "[P]laintiff and putative class members justifiably relied on CIG's representation about the actual cash value." ECF. No, 7. However, Plaintiff fails to plead any facts to demonstrate that Defendant's representations were fraudulent, or that Plaintiff relied on those representations to his detriment.[6] Instead, Plaintiff

---

[6] Despite Plaintiff's assertions that he has sufficiently pled the element of reliance, Plaintiff also contends that reliance is presumed "because the representation goes to a material matter." ECF 29 at p. 23. However, the cases to which Plaintiff cites in support of his contention do not address ADTPA claims or the requisite elements that must be pled.

merely points to a potential difference of opinion as to the fair market valuation of his vehicle. For these reasons, Plaintiff's ADTPA claim must be dismissed.

### IV. Plaintiff's ADTPA Claim Sounds in Contract and Is Outside the Scope of the Act

Despite the countless ways in which Plaintiff attempts to manufacture an ADTPA claim, at its core, this dispute is nothing more than a breach of contract case. Indeed, the entire premise of both Plaintiff's ADTPA claim and his breach of contract claim is that based on its use of AudaExplore Report, Columbia undervalued Plaintiff's total loss claims in violation of his insurance policy and Arkansas law. Thus, Plaintiff's ADTPA claim is an attempt to transform a simple contract dispute into something more and should be dismissed.

Plaintiff incorrectly argues that *CEI Eng'g Assocs. v. Elder Constr. Co*, 2009 Ark. App. 259, at 10 (Ark. 2009), cited in Columbia's motion to dismiss, does not apply because Plaintiff's ADTPA claim is based on more than Columbia's alleged breach of his insurance policy. Plaintiff erroneously claims that "the conduct alleged in the Complaint has already been determined by the Arkansas Insurance Department to constitute unfair or deceptive trade practices." ECF No. 29 at p. 29. The Arkansas Insurance Department has not made any allegations of wrongdoing by Columbia, nor has it made any "determinations" as to whether Columbia's use of the AudaExplore Report violates Arkansas law or amounts to a deceptive practice. Plaintiff's argument is nothing more than a repetition of his

own conjecture concerning Columbia's purported conduct. The question of whether Columbia's use of the AudaExplore Report to value total loss vehicle claims violated Plaintiff's motor vehicle insurance policy and Arkansas law is indisputably governed by contract law. As such, Plaintiff's ADTPA claim must be dismissed.

### V. The ADTPA Does Not Permit Class Claims

The ADTPA's class action bar precludes Plaintiff's class claims. It plainly states that a "private class action under this subsection is precluded unless the claim is being asserted for a violation of Arkansas Constitution, Amendment 89." 4-88-113(f)(1)(B). Despite this clear directive, Plaintiff contends that the prohibition does not apply because (i) it conflicts with Rule 23 and the Supreme Court's holding in *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010); and (ii) it violates the Arkansas Constitution. Neither of Plaintiff's arguments have merit.

Plaintiff attempts to distinguish Columbia's reliance on the courts' holdings in *Fejzulai v. Sams W., Inc.*, 205 F. Supp. 3d 723 (D.S.C. 2016), *Bearden v. Honeywell Int'l Inc.*, No. 3:09-1035, 2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010), and *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733 (N.D. Ohio 2010), by arguing that in those cases, the class action limitation at issue appeared in the same sentence conveying the substantive right. In other words, Plaintiff takes the

position that the fact that the Arkansas legislature decided to start a new sentence requires a finding that the class action bar in the ADTPA is procedural, and not substantive. Plaintiff is incorrect. The substantive right and class action bar in the ADTPA appear consecutively as part of the subsection:

> (f)(1) (A)　A person who suffers an actual financial loss as a result of his or her reliance on the use of a practice declared unlawful by this chapter may bring an action to recover his or her actual financial loss proximately caused by the offense or violation, as defined in this chapter.
> (B)　A private class action under this subsection is prohibited unless the claim is being asserted for a violation of Arkansas Constitution, Amendment 89.

Ark. Code Ann. § 4-88-113.

The courts in *Fejzulai, Bearden,* and *McKinney* correctly distinguished *Shady Grove* because the class action bar at issue there was a standalone procedural rule, a state law counterpart to Rule 23, and not connected to any substantive law. The class action prohibitions at issue in *Fejzulai, Bearden, McKinnley,* like the prohibition in the ADTPA, relate specifically to the acts themselves and appear in the substantive provision. Following Plaintiff's logic, the fact that "not in a representative capacity" was set off by commas in the South Carolina Unfair Trade Practices Act ("Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, *but not in a representative capacity,*

to recover actual damages"), should have led the *Fejzulai* court to hold that the class action bar was not intertwined with a substantive right. Of course, the *Fejzulai* court did not even consider such an argument.

The relevant inquiry is not whether the class action bar is part of the same sentence or in a sentence that immediately follows, but whether it is intertwined with the substantive right itself or a separate standalone procedural law. As the court noted in *Stalvey v. Am. Bank Holdings, Inc.*, No. 4:13-CV-714, 2013 WL 6019320 at *4 (D.S.C. Nov. 13, 2013), the New York statute had absolutely no substantive component at all. Plaintiff has not cited any case where a court has found that the fact that the class action prohibition appears with a different letter in front of it requires a finding that the class action prohibition is separate from the rule itself. What is significant, and the primary factor distinguishing the statutes in *Fejzulai, Bearden,* and *McKinney,* as noted by those courts, from the statute at issue in *Shady Grove,* is that "[u]nlike the New York law at issue in *Shady Grove,* the class action limitation is contained in the substantive rule itself, not in a separate procedural rule." *McKinney,* 744 F. Supp. 2d at 746-47. The same holds true with the class action prohibition in the ADTPA.

Plaintiff also argues that the court should follow *Lisk v. Lumber One Wood Preserving, LLC,* 792 F.3d 1331 (11th Cir. 2015), where the Eleventh Circuit held that a class action bar in the Alabama Deceptive Trade Practices Act was

procedural, not substantive. *Lisk,* which is obviously not binding here, has repeatedly been rejected by other courts. *See Delgado v. Ocwen Loan Servicing, LLC,* No. 13CV4427NGGST, 2017 WL 5201079, at *10 (E.D.N.Y. Nov. 9, 2017)("The decision in *Lisk* has not been widely followed outside of the Eleventh Circuit, however, with most courts outside of that circuit implicitly or explicitly disagreeing with its interpretation of *Shady Grove* and its determination that there was no 'meaningful distinction' between CPLR Section 901 and the Alabama class action bar."); *Chapman v. Priceline Grp., Inc.,* No. 3:15-CV-1519(RNC), 2017 WL 4366716, at *7 (D. Conn. Sept. 30, 2017) ("I am not persuaded that I should follow *Lisk* to reach a decision at odds with two prior decisions in this District that are directly on point."); *Fejzulai,* 205 F. Supp. 3d at 728 ("The Court disagrees and finds *Lisk* unpersuasive .... ")*In re Effexor Antitrust Litig.,* 357 F. Supp. 3d 363, 389 (D.N.J. 2018) (rejecting *Lisk)*. Indeed, in May 2016, following the 2015 *Lisk* opinion, the Alabama legislature amended its Deceptive Trade Practices Act, Ala. Code § 8-19-10(f), to specifically state that the class action prohibition was substantive.[7] Accordingly, the continued viability of *Lisk* is highly questionable, and its flawed rationale should be rejected by this Court.

---

[7] Ala. Code§ 8-19-1 O(f) now reads, "A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class. The limitation in this subsection is a substantive limitation and allowing a consumer or other person to bring a class action or other representative action for a violation of this chapter would abridge, enlarge, or modify the substantive rights created by this chapter."

## VI. The ADTPA's Class Action Bar Is Not Unconstitutional

Plaintiff's constitutional argument is equally without merit. Plaintiff contends that because the class action prohibition is a legislatively created rule of pleading, and procedure, it impinges on the right of the Arkansas Supreme Court to prescribe the rules of pleading, practice and procedure for all courts. Plaintiff is wrong.

The class action prohibition in the ADTPA is substantive, not procedural. Indeed, when the ADTPA was initially enacted in 1977, there was no private right of action at all; only the Arkansas attorney general had the ability to sue under the ADTPA. The legislature later amended the statute to allow a private right of action and to limit that private right of action to individual, not class litigation. The Arkansas attorney general still retains the right to sue a company under the ADTPA on behalf of the people of Arkansas. The fact that the statute also grants a right to private persons to sue companies as well, under limited circumstances (i.e., not as a class), does not mean that the limitations on the substantive right to maintain a private cause of action under the ADTPA constitute a procedural issue for the Arkansas Supreme Court to govern. The limitation on what types of private rights of action can be maintained under ADTPA is no more procedural than the amendment of the statute that created the private right of action.[8]

---

[8] Defendant also notes that the 2017 amendment was a three-part substantive amendment. Along with the prohibition

Plaintiff contends that the ADTPA's class action bar infringes on the rule-making authority of the judicial branch. It does not. The prohibition does not purport to implement procedure on how class actions are to proceed. It simply restricts the substantive right to enforce the ADTPA for the good of the public at large to the attorney general.

While Plaintiff cites two cases for the contention that a legislative enactment regarding the propriety of a class action is procedural, *Seeco, Inc. v. Snow,* 2016 Ark. 444, 5, 506 S.W.3d 206 (2016) and *Fraley v. Williams Ford Tractor & Equip. Co.,* 339 Ark. 322, 335, 5 S.W.3d 423, 431 (1999), both involved the propriety of a class action under Rule 23 of the Arkansas Rules of Civil Procedure, a purely procedural statute not at issue in the instant case. Plaintiff also likens the class action prohibition to cases such as *Mendoza v. WIS Int'l, Inc.,* 2016 Ark. 157, at *8 490 S.W.3d 298, 303-04, *Johnson v. Rockwell Automation, Inc.,* 2009 Ark. 241, at *7, 308 S.W.3d 135, 141, *Weidrick v. Arnold,* 310 Ark. 138, 835 S.W.2d 843 (1992), and *Summerville v. Thrower,* 369 Ark. 231, 253 S.W.3d 414 (2007). However, none of these cases involved statutes that impacted any substantive rights. For example, in *Summerville,* the court considered a statute that required a medical malpractice plaintiff affidavit of reasonable cause after filing the complaint or the action would be dismissed. In concluding the law was procedural,

---

of class actions, the 2017 amendment requires a plaintiff to prove that she suffered an "actual financial loss," and requires the plaintiff to show she relied on the deceptive practice to recover damages.

the court explained that a substantive law is "the part of the law that creates, defines, and regulates the rights, duties, and powers of parties, while procedural law is defined as the rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." 253 S.W.3d at 420.

Thus, under *Summerville,* the ADTPA's class action bar is undeniably substantive because it is embedded in the law that defines and establishes an individual's right to pursue a deceptive trade practices action. It does not prescribe rules or steps for having that right judicially enforced and therefore is not an unconstitutional intrusion into the Supreme Court's procedural authority.

## CONCLUSION

For the reasons set forth above and in Columbia's brief in support of its motion to dismiss, Columbia moves this Court to enter an order dismissing with prejudice Plaintiff's First Amended Class Action Complaint.

Respectfully submitted,

Paul D. Waddell (ABN 87179)
Shane Baker (ABN 2001187)
Samuel T. Waddell (ABN 2014204)
WADDELL, COLE & JONES, PLLC
P.O. Box 1700
Jonesboro, AR 72403

Attorneys for Defendant,
Columbia Mutual Insurance Company

## CERTIFICATE OF SERVICE

  I, Paul Waddell, hereby certify that a true and correct copy of the foregoing document was filed via CM/ECF on February 18, 2020, which will send notification to all counsel of record:

John Holleman (ABN 91056)
Timothy A. Steadman (ABN 2009113)
Jerry Garner (ABN 2014134)
HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201

Mr. Lloyd "Tre" Kitchens (ABN 99075)
THE BRAD HENDRICKS LAW FIRM
500 C Pleasant Valley Drive
Little Rock, Arkansas 72227